UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.H.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. 2:19-cv-05779-SHK<br><br>OPINION AND ORDER |

Plaintiff T.H.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "Agency," or "Defendant") denying his application for supplemental security income ("SSI"), under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. § 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

# I. BACKGROUND

Plaintiff filed an application for SSI on March 31, 2016, alleging disability beginning on March 1, 2014. Transcript ("Tr.") 163-73.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on August 27, 2018, ALJ Susan Hoffman determined that Plaintiff was not disabled. Tr. 12-26. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on May 15, 2019. Tr. 1-3. This appeal followed.

# II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted). A reviewing

---

[2] A certified copy of the Administrative Record was filed on November 27, 2019. Electronic Case Filing Number ("ECF No.") 20. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 416.920. The claimant carries the burden of proof at steps one

through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [SSI]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).[3]

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [SSI]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and

---

[3] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

4

the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [SSI]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [SSI]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [SSI]. See id.

Id. at 1098-99.

**B.     Summary Of ALJ's Findings**

The ALJ found at step one that "[Plaintiff] has not engaged in [SGA] since March 31, 2016, the application date (20 CFR 416.971 et seq.)." Tr. 17. At step two, the ALJ found that "[Plaintiff] has the following severe impairments: degenerative disc disease of the lumbosacral spine, mild degenerative joint disease of the right shoulder, and major depressive disorder, moderate (20 CFR 416.920(c))." Id. At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." Id.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

perform medium work as defined in 20 CFR 416.967(c) except with the ability to consistently perform only simple, routine tasks and no more than superficial interaction with the public and no more than occasional interaction with coworkers.

Tr. 18-19. The ALJ then found, at step four, that "[Plaintiff] is unable to perform any past relevant work (20 CFR 416.965)." Tr. 24.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on July 25, 1960[,] and was 55 years old, which is defined as an individual of advanced age, on the date the application was filed (20 CFR 416.963)." Id. The ALJ observed that "[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964)." Id. The ALJ then added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 416.969 and 416.969a)." Tr. 25. Specifically, the ALJ found that Plaintiff could perform the "medium, unskilled" occupations of "packer[,]" as defined in the dictionary of occupational titles ("DOT") at DOT 920.587-018, "store laborer (DOT No. 922.687-058)[,]" and "vehicle cleaner (DOT No. 919.687-014)." Id. The ALJ based her decision that Plaintiff could perform the aforementioned occupations "on the testimony of the [VE]" from the administrative hearing, after "determin[ing] that the [VE's] testimony [wa]s consistent with the information contained in the [DOT]." Id.

After finding that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that "[a] finding of 'not disabled' is therefore appropriate under the

6

framework of the above-cited rule." Id. The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the Social Security Act, since March 31, 2016, the date the application was filed (20 CFR 416.920(g))." Id.

### C. Issues Presented

In this appeal, Plaintiff contends the ALJ erred by failing to: (1) properly consider the opinion of treating physician Dr. Lilit Yegiazaryan; and (2) provide a complete RFC based on the opinion of consultative examiner Dr. Rashin D'Angelo. ECF No. 25, Joint Stip. at 15. The Court finds that the second issue is dispositive, and so it begins and ends its analysis there.

### D. Court's Consideration Of Plaintiff's Second Issue

#### 1. Parties' Arguments

Plaintiff argues that the ALJ failed to account for all of Dr. D'Angelo's findings of moderate limitations in the RFC. Id. at 14. Specifically, Plaintiff argues that the ALJ erred by rejecting Dr. D'Angelo's opinion that Plaintiff would have moderate limitations and difficulties in "completing a normal workday and work week due to his mental condition," "accepting instructions from supervisors and interacting with coworkers and with the public," and being able to "handle the usual stresses, changes and demands of gainful employment." Id.

Defendant responds that the ALJ properly translated Dr. D'Angelo's medical opinion about Plaintiff's moderate limitations into "specific functional limitations in the RFC" in the "areas of social interaction as well as concentration, persistence, and pace," by "finding that Plaintiff could perform 'only simple, routine tasks' with 'no more than superficial interaction with the public and no more than occasional interaction with coworkers.'" Id. at 19.

#### 2. Medical Opinions

##### a. Dr. D'Angelo

On August 8, 2016, Dr. D'Angelo performed a consultative psychological examination of Plaintiff. Tr. 262. Dr. D'Angelo did not have any medical records

7

to review and based his findings entirely on the examination of Plaintiff. Id. Dr. D'Angelo noted that Plaintiff appeared "disheveled, unkempt, withdrawn, [and] guarded." Tr. 264. Plaintiff was cooperative and maintained eye contact, but he had difficulty establishing rapport. Id. His psychomotor activity was slow. Id. Plaintiff's mood was depressed and irritable and his affect was flat. Id. His thought processes were linear, and he denied suicidal or homicidal ideations. Id.

Dr. D'Angelo conducted a series of tests with Plaintiff and made findings. Id. Plaintiff registered three out of three items immediately and two out of three items after five minutes, completed serial threes but struggled with serial sevens, spelled the word "world" forward but struggled spelling it backwards, stated similarities but could not analyze simple proverbs, and named the President of United States but could not identify the capital of either the United States or California. Id. Dr. D'Angelo diagnosed Plaintiff with Major Depressive Disorder, Single Episode, Moderate and Psychosocial Stressors, including financial and health impairment, poor social and family support, and homelessness, and determined Plaintiff's prognosis was fair. Tr. 265-66. Dr. D'Angelo assessed Plaintiff's GAF score as 60. Tr. 265.

Dr. D'Angelo found that Plaintiff exhibited "mild difficulties" interacting with the clinic staff and the doctor, "maintaining composure and even temperament," and "focusing and maintaining attention." Id. He had "moderate difficulties" in "maintaining social functioning" and "concentration, persistence and pace." Id.

Based on "the objective findings presented during this interview," Dr. D'Angelo found that Plaintiff would have "no limitations performing simple or repetitive tasks and mild limitations performing detailed and complex tasks." Id. He further found that Plaintiff would have "moderate difficulties" and "moderate limitations" in being able to do the following:

- "perform work activities on a consistent basis without special and additional supervision";
- "handle the usual stresses, changes and demands of gainful employment";
- "complet[e] a normal workday and work week due to his mental condition"; and
- "accept[] instructions from supervisors and interacting with coworkers and the public."

Id.  Finally, Dr. D'Angelo found that Plaintiff responded "somewhat adequately" to treatment, and because Plaintiff's psychosocial stressors exacerbate his symptoms, adjusting these stressors is required for his symptoms to improve.  Id.

### b.    Dr. Jacobs

As discussed in greater detail below, because the ALJ gave great weight to the opinion of state agency reviewing physician Dr. Uwe Jacobs, the Court discusses his opinion here.  On August 24, 2016, Dr. Jacobs opined that Plaintiff was "moderately limited" in being able to do the following:

- "understand and remember detailed instructions," but that Plaintiff "can perform simple tasks";
- "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances";
- "sustain an ordinary routine without special supervision";
- "work in coordination with or in proximity to others without being distracted by them";
- "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," but that Plaintiff can "sustain [concentration, persistence, and pace] for simple tasks";
- "interact appropriately with the general public";

9

- "ask simple questions or request assistance";
- "accept instructions and respond appropriately to criticism from supervisors";
- "get along with coworkers or peers without distracting them or exhibiting behavioral extremes";
- "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness," but Plaintiff "can sufficiently get along with others";
- "respond appropriately to changes in the work setting," but Plaintiff "can adapt."

Tr. 79-80. Dr. Jacobs further elaborated that Plaintiff is "capable of understanding and remembering simple instructions and procedures," "can maintain concentration, pace and persistence for simple tasks," "would be best suited to work with minimal social demands and no public contact," and "can adapt to a low demand work setting consistent with simple work." Tr. 80.

### 3. ALJ's Consideration Of The Medical Opinions

The ALJ reviewed Plaintiff's medical record history and concluded that Plaintiff's "primary issue has been his homelessness for several years." Tr. 24. The ALJ found that the focus of Plaintiff's medical records was Plaintiff's economic and housing problems, and otherwise "the objective treatment evidence surrounding his claims of various mental and medical problems is seriously lacking and inconsistent." Id. The ALJ also added that Plaintiff was "stable on his psychiatric medicated regime." Id.

In coming to this conclusion, the ALJ reviewed the opinions of, in relevant part, Drs. D'Angelo and Jacobs. The ALJ gave Dr. D'Angelo's opinion "partial weight" because "Dr. D'Angelo appeared to place significant emphasis on [Plaintiff's] homelessness and financial stress as 'psychological stressors need to be adjusted including resolution of his living situation in order for his symptoms to

improve.'" Tr. 21.  The ALJ added that Dr. D'Angelo believed Plaintiff "exhibited only moderate symptoms of depression" and that Plaintiff had an "adequate response to psychiatric treatment." Id.  The ALJ concluded that "[it] appears [Dr. D'Angelo] focused on [Plaintiff's] inadequate housing, versus the mental condition and its mental limitations, as the basis for his opinion about [Plaintiff's] ability to work." Id.

Conversely, the ALJ afforded Dr. Jacobs' opinion "great weight." Tr. 22. The ALJ noted that Dr. Jacobs "found [Plaintiff] capable of[:] understanding and remembering simple instructions and procedures; maintaining concentration, persistence and pace for simple tasks; work[ing] with minimal social demands and no public contact; and adapt[ing] to a low demand work setting consistent with simple work." Tr. 21.  According to the ALJ, such findings were "consistent with the mental health treatment record as a whole." Tr. 22.

### 4. Applicable Legal Standards

The RFC is the maximum a claimant can do despite his limitations.  20 C.F.R. §§ 404.1545, 416.945.  In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate all of the relevant medical and other evidence, including the claimant's testimony.  SSR 96-8p, 1996 WL 374184.  The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted).  "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

### 5. ALJ's Decision Is Not Supported By Substantial Evidence.

Here, as an initial matter, the ALJ did not find that the moderate limitations assessed by Dr. D'Angelo were contradicted by any other medical opinions and, curiously, Dr. Jacobs—whose opinion the ALJ gave "great weight" to—similarly concluded that Plaintiff was moderately limited in his ability to work consistently without special supervision, accept instructions from supervisors, complete a normal workday and workweek, and handle changes at work. Tr. 22, 79-80, 265. Thus, because the ALJ did not find that Dr. D'Angelo's opinion was contradicted

by another medical source, and the ALJ instead gave great weight to the similar opinion of Dr. Jacobs, the ALJ needed to provide clear and convincing reasons for rejecting Dr. D'Angelo's opinion. See Trevizo, 871 F.3d at 675. However, for the reasons discussed below, the ALJ failed to do so here.

First, the ALJ's rejection of Dr. D'Angelo's opinion—because it was focused too heavily on Plaintiff's "homelessness and financial stress"—fails because the ALJ selectively relied on one aspect of Dr. D'Angelo's opinion, while ignoring other reasons provided by Dr. D'Angelo in support of his findings. Tr. 21; see Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001) (finding that when weighing medical opinion evidence, the ALJ cannot "selectively focus on aspects of [a physician's] report which tend to suggest non-disability"); see also Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in a plaintiff's records while ignoring others).

Specifically, although Dr. D'Angelo did opine that Plaintiff's psychosocial stressors exacerbate his symptoms and that Plaintiff's symptoms would improve with adjustment of these stressors, Dr. D'Angelo also listed Plaintiff's health impairment and poor social and family support as exacerbating psychosocial stressors in Plaintiff's life. See Tr. 265 (Dr. D'Angelo listing Plaintiff's "financial and health impairment, poor social and family support[,] and homelessness" as his "psychosocial stressors" that were exacerbating his symptoms). Thus, in addition to Plaintiff's financial stress and homelessness, Dr. D'Angelo also listed Plaintiff's health impairment and poor social and family support as psychological stressors, which the ALJ failed to consider when rejecting Dr. D'Angelo's opinion.

Moreover, Dr. D'Angelo provided factual support for his aforementioned opinion, which the ALJ ignored when rejecting Dr. D'Angelo's opinion for its overreliance on Plaintiff's homelessness and financial stress. Specifically, although Dr. D'Angelo acknowledged that Plaintiff "report[ed] having depression, anxiety, and confusion" after he "went through a divorce[,] . . . then lost his job of 19

1  years[,] . . . [and then] lost his home and became homeless[,]" Dr. D'Angelo also
2  elaborated on Plaintiff's lack of familial support. Tr. 262-63, 265. Specifically, in
3  terms of familial support, Dr. D'Angelo opined that Plaintiff "does not appear to
4  have any social family support" and explained that Plaintiff "attended therapy and
5  counseling [] during his adolescence because of family stressors[,]" Plaintiff "has
6  no relationship with his family[,]" and Plaintiff "has a 19-year-old child with whom
7  he has limited contact." Tr. 263, 265.
8        Next, in terms of social support, Dr. D'Angelo reported that Plaintiff "goes
9  to places by himself" and that Plaintiff's "hobbies include spending a day looking
10 for shade." Tr. 263-64.
11       Further, Dr. D'Angelo supported his opinion by discussing the clinical
12 observations he made during his examination of Plaintiff. Specifically, Dr.
13 D'Angelo explained that Plaintiff arrived to the examination "disheveled,
14 unkempt, unshaven, and thinly-framed[,]" he "was withdrawn and guarded during
15 the evaluation[,]" he "had difficulty establishing rapport with the examiner[,]"
16 "[h]is psychomotor activity was slow[,]" his mood was "depressed and
17 irritable[,]" his "affect was flat[,]" he was "unable to analyze the meaning of
18 simple proverbs[,]" or to "identify the capital of the United States or of
19 California[,]" he "struggled with serial sevens" and with spelling the word
20 "world" backwards, and he exhibited difficulty "interacting with clinic staff and
21 [him]self[,]" and with "maintaining composure and even temperament during the
22 examination. Tr. 262-65.
23       Accordingly, because the ALJ failed to consider the above discussed
24 evidence when rejecting Dr. D'Angelo's opinion, the ALJ's rejection of Dr.
25 D'Angelo's opinion for its reliance on Plaintiff's homelessness and financial stress
26 was not a clear and convincing reason to reject Dr. D'Angelo's opinion. Tr. 21.
27       Second, the ALJ's rejection of Dr. D'Angelo's opinion because Dr.
28 D'Angelo believed Plaintiff "exhibited only moderate symptoms of depression"

1    and that Plaintiff had an "adequate response to psychiatric treatment" ignores Dr.
2    D'Angelo's opinion that Plaintiff was responding only "<u>somewhat</u> adequately[,]"
3    to treatment but that "[Plaintiff's] psychosocial stressors need to be adjusted
4    including resolving his living situation in order for his symptoms to improve[,]"
5    and that Plaintiff had only "<u>slight</u> improvements because of his medications." Tr.
6    21, 262, 265 (emphasis added). Moreover, the record reveals that Plaintiff's
7    medication exacerbates Plaintiff's memory loss symptoms. <u>See</u> Tr. 49-50
8    ("Plaintiff testifying that side effects of his medication include "forgetting things
9    like more frequently than [he] ever ha[s] before."). Thus, the record reveals that
10   the ALJ again selectively relied on some evidence when rejecting Dr. D'Angelo's
11   opinion while ignoring other reasons provided by Dr. D'Angelo in support of his
12   findings. <u>Edlund</u>, 253 F.3d at 1159-60; <u>Holohan</u>, 246 F.3d at 1207-08.

13        Third, Dr. D'Angelo's opinions appear consistent with Plaintiff's medical
14   record, which reflects that Plaintiff's depression affected, among other things, his
15   social functioning, stress levels, and ability to maintain an ordinary schedule. <u>See</u>
16   Tr. 250-51, 290, 303-04. And, most significantly, as discussed above, Dr.
17   D'Angelo's opinion is supported by Dr. Jacobs's opinion, which the ALJ gave
18   "great weight" to because it was "consistent with the mental health treatment
19   record as a whole." Tr. 21-22. Moreover, in forming his opinion, Dr. Jacobs gave
20   great weight to Dr. D'Angelo's opinion because it was "supported by objective
21   findings," and subsequently he mirrored Dr. D'Angelo's moderate limitations. Tr.
22   78-80.

23        Accordingly, the Court finds that the ALJ failed to offer legally sufficient
24   reasons for rejecting Dr. D'Angelo's opinion. Moreover, because the ALJ failed to
25   offer legally sufficient reasons for rejecting Dr. D'Angelo's opinion that Plaintiff
26   had several moderate limitations (i.e., performing work activities on a consistent
27   basis without special and additional supervision, accepting instructions from
28   supervisors, completing a normal workday or workweek, and handling the stresses,

changes, and demands of work), the ALJ's assessment of Plaintiff's RFC, which did not include the limitations endorsed by Dr. D'Angelo, is not supported by substantial evidence. See Lisardo S. v. Berryhill, No. 5:18-cv-00480-AFM, 2019 WL 773686, at *5-7 (C.D. Cal. Feb. 20, 2019) (finding that the ALJ erred in rejecting some of the consultative examiner's opinions about plaintiff's moderate limitations, where the ALJ's decision to afford the consultative examiner's opinion partial weight was not supported by substantial evidence). As such, remand for further proceedings is appropriate so that the ALJ may reassess Dr. D'Angelo's opinion.

## IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing") (citation and internal quotation marks omitted).

IT IS SO ORDERED.

DATED: 6/8/2020

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge